UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

DAVID SERENA, RYAN GOMEZ,
CHRIS ROCHA, MANUEL
ESCAMILLA, CARMEN ALVAREZ AND
ALEJANDRA HERNANDEZ,

                                        NO. CIV. S-06-1262 FCD KJM

          Plaintiffs,

     v.                                 MEMORANDUM AND ORDER

STEPHEN L. MOCK, Presiding
Judge, Superior Court of Yolo
County, individually and in
his official capacity; THOMAS
WARRINER, Judge, Superior
Court of Yolo County,
individually and in his
official capacity; ROBIN
WEAVER, Yolo County Jury
Commissioner, individually
and in her official capacity,

          Defendants.

----oo0oo----

     This matter before the court is whether 1) the court may

properly assert jurisdiction over plaintiffs' claims against

defendants for allegedly violating their due process and equal

protection rights under the Fourteenth Amendment and 42 U.S.C. §
1983 and their equal protection rights under 42 U.S.C. § 1981 and
whether 2) plaintiffs have standing to raise these claims.  This
matter was set for a status conference and both parties were
directed to brief these issues.

Plaintiffs allege in their amended complaint ("FAC") that
defendants have caused, and will cause, plaintiffs to suffer:

> [I]rreparable injury in the form of lack of . . .
> unequal notice of the opportunity to apply for [Yolo
> County] grand jury service, exclusion from the grand
> jury selection process, exclusion from service on the
> grand jury and exclusion from service as foreperson as
> a result of defendants' actions unless injunctive
> relief is granted.

(Pls.' FAC, filed June 30, 2006, at ¶¶ 57-58).

Defendants first contend that the court lacks jurisdiction
to hear plaintiffs' claims against defendants, as defendants are
immune from liability as state officials under the Eleventh
Amendment ("11th Amendment").  Moreover, defendants argue that
plaintiffs have failed to establish standing to bring their
claims in this court because they did not apply for grand jury
service and did not show discriminatory intent on the part of
defendants.  Defendants also argue that plaintiffs lack standing
to assert claims brought on behalf of Asians and "Non-whites" and
to assert their due process claim under § 1983.

The court ruled on the preliminary issues of 11th Amendment
immunity and standing at a hearing held on August 4, 2006.  This
order memorializes the court's rulings.

/////

/////

/////

2

## I.    Jurisdiction

Defendants argue that, as state officials, they are immune from liability under the 11th Amendment.  The 11th Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

It is a well-settled principle that "nonconsenting States may not be sued by private individuals in federal court." Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356, 363 (2001).  Moreover, the 11th Amendment bars suits against state officials when "the state is the real, substantial party in interest." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) (quoting Ford Motor Co. v. Dept. of Treasury of Indiana, 323 U.S. 459, 464 (1945), overruled on other grounds by Lapides v. Bd. of Regents, 533 U.S. 613 (2002)).

However, the Supreme Court has recognized a narrow exception to 11th Amendment immunity, declaring that "a suit challenging the constitutionality of a state official's action is not one against the State." Pennhurst State Sch., 465 U.S. at 102 (citing Ex parte Young, 209 U.S. 123, 156 (1908)).  The Ex parte Young ("Young") doctrine may be invoked only in certain circumstances.  The Ninth Circuit has reinforced that the purpose of the Young doctrine is to protect the sovereign immunity afforded to states under the 11th Amendment while preventing state officials from violating federal law. Agua Caliente Band of Cahuilla Indians v. Hardin, 223 F.3d 1041, 1045 (9th Cir. 2000)(citing Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261,

1   269 (1997)).  Specifically, a state official's alleged

2   constitutional violation(s) must be ongoing and continuous, not

3   just a one-time violation or recurring past violations.  <u>Papasan</u>

4   <u>v. Allain</u>, 478 U.S. 265, 277-278 (1985).  Furthermore, the state

5   official must have "some connection with the enforcement of the

6   [unconstitutional] act[,]" such that suit against the official is

7   not equated with a suit against the state.  <u>Ex parte Young</u>, 209

8   U.S. at 157.  Similarly, the relief requested cannot "infringe

9   upon a state's sovereignty to such a degree to render the suit

10  against the state itself . . . ."  <u>Hardin</u>, 223 F.3d at 1048

11  (citing <u>Idaho</u>, 521 U.S. at 296).

12          **A.   Ongoing and continuous violations**

13          Defendants argue that here, plaintiffs "exclusive[ly] focus

14  on [defendants] past conduct," not ongoing conduct, as the basis

15  for their causes of action against defendants.  (Dfs.' Memo. Re:

16  Sov. Imm. and Standing at 8:13-18).  Accordingly, they contend

17  that the <u>Young</u> exception to 11th Amendment immunity is

18  inapplicable.  The court disagrees.  Plaintiffs allege that

19  defendants' practices and actions "have led to the systematic

20  exclusion of persons of constitutionally cognizable groups."

21  (Pls.' FAC at ¶ 37).  Plaintiffs rely upon defendants' alleged

22  past actions in recruiting candidates and selecting members of

23  the Yolo County Grand Jury to declare that Hispanic, Asian and

24  non-White persons have been consistently excluded from the

25  recruitment and selection processes.  (<u>Id.</u>)  However, they also

26  contend, in all three causes of action, that "plaintiffs *will*

27  suffer irreparable injury" from defendants' alleged failure to

28  notify them of the opportunity to apply for grand jury service,

                                4

and subsequently, from defendants' systematic exclusion of plaintiffs' from the grand jury selection process. (<u>Id.</u> at ¶¶ 52, 58, 62)(emphasis added).  The court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  <u>Retail Clerks Int'l Ass'n v. Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963). Accordingly, the court reasonably infers from plaintiffs' FAC that defendants' alleged discriminatory actions have persisted beyond the 2005-2006 grand jury recruitment and selection processes, thereby causing future "irreparable injury" to plaintiffs.

Moreover, while the 11th Amendment bars suits against state officials for retrospective relief, a suit seeking prospective relief is permissible.  <u>Ulaleo v. Paty</u>, 902 F.2d 1395, 1398 (9th Cir. 1990).  The Ninth Circuit has specifically held that an injunction is the relief available against state officials.  <u>Id.</u> Plaintiffs request:

> . . . a *permanent injunction* compelling defendants to cease the systematic exclusion of non-White persons, Asians and Hispanics from the Yolo County Grand Jury . . . and compelling defendants to adopt written procedures in accordance with the United States Constitution to insure the full and equal participation of non-White person, Asians and Hispanics in the . . . selection process and [participation on the] Yolo County Grand Jury, as grand jury members and forepersons.

(Pls.' FAC at ¶ 62(2))(emphasis added).  Accordingly, as plaintiffs seek prospective relief to prevent defendants from violating their constitutional rights in the future, they have sufficiently pled "ongoing and continuous" violations for purposes of the <u>Young</u> exception to 11th Amendment immunity.

**B.    State official's connection with unlawful act**

Nevertheless, defendants argue that the <u>Young</u> doctrine does not protect plaintiffs' right to sue defendant Robin Weaver ("Weaver") because as Yolo County Grand Jury Commissioner, she is not responsible for selecting potential grand jurors.  While a defendant must be connected to the alleged unlawful act to properly be sued as a state official, defendants fail to address the entirety of plaintiffs' FAC.  In addition to alleging that defendants have systematically excluded Hispanics, Asians and non-Whites from the Yolo County Grand Jury selection process, that is, the application, interview, and final selection stages of jurors and a foreperson, plaintiffs also contend that defendants have excluded these populations from the *recruiting* process.  (Pls.' FAC at ¶ 37).  Accordingly, plaintiffs contend that they have been denied "their right to receiv[e] equal notice of the opportunity to apply for grand jury service."  (Pls.' FAC at ¶¶ 50, 57, 61).

Defendant Weaver admits that she is "responsible . . . for administering the recruitment of grand jurors for the 2006-2007 Yolo County Grand Jury."  (Weaver Decl., filed July 20, 2006, at ¶ 2).  While "[a]ny process for recruiting grand jurors is under the ultimate control of the [Yolo County Superior Court] judges[,]" defendant Weaver details the steps she has taken in the past to recruit racial minorities, including sending letters to community groups.  (<u>Id.</u> at ¶ 4).  At this stage, the allegations in plaintiffs' FAC sufficiently assert that defendant Weaver participated in one of the very processes that plaintiffs challenge on constitutional grounds.  As such, plaintiffs may

1  properly invoke the Young exception to 11th Amendment immunity as

2  to their claims against defendant Weaver, to the extent those

3  claims arise from the exclusion of Hispanics, Asians and non-

4  Whites from the grand juror recruitment process.

5       Therefore, the court may properly assert jurisdiction,

6  pursuant to the Young doctrine,[1] over plaintiffs' claims against

7  defendants for alleged ongoing and continuous constitutional

8  violations in recruiting and selecting Yolo County grand jurors

9  and grand jury forepersons.[2]

10  **II.   Standing**

11      **A.   Failure to apply**

12       The Supreme Court has delineated a three-part test to

13  determine whether a party has established standing.  Lujan v.

14  Defenders of Wildlife, 504 U.S. 555, 560-561 (1992).  First, the

15

16      [1]   Defendants argue that the Supreme Court's decision in

17  Carter v. Jury Commission does not abrogate 11th Amendment
   immunity for state officials who are alleged to have "engaged in

18  racial discrimination in grand jury selection." (Dfs.' Memo. Re:
   Sov. Imm. and Standing at 16:6-10).  However, as the Young

19  exception to 11th Amendment immunity is applicable in the case at
   hand, the court need not address this argument.

20      [2]   Defendants note that plaintiffs allege defendant Weaver

21  violated California Penal Code § 903.1, requiring a jury
   commissioner to, "pursuant to written rules or instructions

22  adopted by a majority of the judges of the superior court of the
   county, . . . furnish the judges of the court annually a list of

23  persons qualified to serve as grand jurors . . . ." (Dfs.' Memo.
   Re: Sov. Imm. and Standing at 9:3-6).  Subsequently, they argue

24  that the court may not assert jurisdiction over plaintiffs'
   claims regarding an alleged violation of state law under the

25  Young doctrine.  However, even if plaintiffs' claims against
   defendant Weaver arose from an alleged violation of state law,

26  under the Young doctrine, the court may still assert jurisdiction
   over their claims to the extent plaintiffs allege defendant

27  Weaver's actions violated federal law.

28

plaintiff must have suffered an injury in fact, that is, "an invasion of a legally protected interest" which is concrete and particularized, and actual or imminent.  _Id._ at 560 (citations omitted).  Second, the injury must be "fairly . . . trace[able] to the challenged action of the defendant . . . ."  _Id._  Finally, there must exist a likelihood that the "injury will be redressed by a favorable decision" for the plaintiff.  _Id._ at 561.

Defendants first argue that, since plaintiffs have not actually applied to become Yolo County grand jurors or forepersons, they lack standing to bring their claims alleging that they have been systematically excluded from the grand jury selection process.  To support their argument, defendants cite the Supreme Court's opinion in _Moose Lodge No. 107 v. Iris_.  In _Moose Lodge_, the Supreme Court held that, since the plaintiff failed to apply for membership with a club and therefore was not injured by the club's membership policy, he lacked standing to litigate the constitutional validity of the membership policy. 407 U.S. 163, 167-168, 171 (1972).  However, defendants fail to recognize the distinction between the facts of _Moose Lodge_ and the facts at hand here.  Plaintiffs allege, not only that they were racially discriminated by defendants in the selection process for Yolo County grand jurors and foreperson, but that they did not receive an "equal notice of the opportunity to apply for grand jury service" in the first place. (Pls.' FAC at ¶¶ 50, 56, 60).  However, the Supreme Court in _Moose Lodge_ did not address whether the plaintiff was unconstitutionally denied an opportunity to apply for membership with Moose Lodge.  As such,

defendants' reliance upon <u>Moose Lodge</u> is unavailing.[3]   Plaintiffs
have pled a concrete, particularized and actual injury, caused by
defendants' alleged unequal recruitment process for grand jury
membership, such that they have standing to sue for injuries
incurred from defendants' alleged conduct.

Moreover, plaintiffs' failure to apply for membership on the
grand jury does not bar them from challenging racial
discrimination in the grand jury selection process as well.
According to defendants, the process instituted for selecting the
2005-2006 and 2006-2007 Yolo County grand juries is comprised of
four steps.  The Yolo County Superior Court ("Superior Court")
recruits applicants, candidates submit membership applications, a
Superior Court judge interviews applicants, and grand jurors and
alternates are selected through a lottery process.  It is
apparent to the court that, based upon defendants' description of
the grand jury selection process, any exclusion of the Hispanic,
Asian and non-White populations from the first stage of the grand
jury selection process - recruitment - would lead directly to

---

[3]      Similarly, defendants citations to the Supreme Court's
opinion in <u>Allen v. Wright</u> and the Ninth Circuit's opinion in
<u>Smelt v. County of Orange</u> are inapplicable in this case.   In
<u>Allen</u>, the Supreme Court held that the plaintiffs lacked standing
"to litigate their claims based upon the stigmatizing injury
often caused by racial discrimination."  468 U.S. 737, 755
(1984).  Specifically, the court found that the plaintiffs were
not personally denied equal treatment, where the Government
granted tax exemptions to racially-discriminatory private
schools, to constitute a judicially cognizable injury.  <u>Id.</u> at
752-756.  In <u>Smelt</u>, the Ninth Circuit determined that the
plaintiffs lacked standing to challenge Congress' definition of
marriage on the ground that it denied them benefits, in part
because the plaintiffs had not yet applied for any benefits.   447
F.3d 673, 683-684 (9th Cir. 2006).  Neither case addresses
circumstances similar to the case at hand, where plaintiffs have
allegedly been denied *notice of the opportunity to apply* for
membership on the Yolo County Grand Jury in the first place.

1    exclusion in the three remaining stages of the process.

2    Nevertheless, defendants ask the court to assume that had

3    plaintiffs applied for grand jury membership, "they likely would

4    have either been selected as a grand juror or designated as an

5    alternative." (Dfs.' Memo. Re: Sov. Imm. and Standing at 11:3-

6    8). The court refuses to make such an assumption, which would

7    thereby deny plaintiffs the opportunity to challenge the alleged

8    discriminatory nature of the grand jury selection process. As

9    the selection process is directly linked to the recruitment

10   process, plaintiffs do not lack standing simply because they did

11   not receive an opportunity to apply for grand jury membership.

12       **B.  Third party standing**

13       Defendants contend that plaintiffs lack standing because

14   they are "asserting claims on behalf of racial groups to which

15   they do not belong." (Dfs.' Memo. Re: Sov. Imm. and Standing at

16   14:20-21). They further contend that a "plaintiff lacks standing

17   to assert claims on behalf of third parties." (Id. at 14:24).

18   As noted earlier, plaintiffs request a declaratory judgment and

19   permanent injunction regarding the systematic exclusion of three

20   populations, Hispanics, Asians, and non-White persons, from the

21   grand jury selection process. (Pls.' FAC at ¶ 62). However, all

22   plaintiffs are of Hispanic descent. (Id. at ¶¶ 3-8).

23       Under the constitutional requirements of standing, a

24   plaintiff's alleged injury must be "fairly traceable" to the

25   defendant's alleged conduct. In the case at hand, plaintiffs'

26   injury, systematic exclusion from the grand jury recruitment and

27   selection process, including service as a juror or foreman, is

28   fairly traceable to defendants' alleged exclusion of Hispanics

10

from these processes.  However, as plaintiffs are all Hispanics,
their injuries are not fairly traceable to the alleged exclusion
of Asian and non-Whites.

While courts have permitted a party to bring actions on
behalf of third parties, plaintiffs here do not satisfy the
stringent requirements for such situations.  The test for third
party standing requires that the plaintiff suffer an injury in
fact, that the plaintiff have a close relation to the third
party, and that the third party is hindered from protecting his
or her own interests.  Powers v. Ohio, 499 U.S. 400, 410-11
(1991).  In this case, plaintiffs do not have "a close relation"
with Asians and non-Whites for purposes of third party standing.
In Powers, the court found that an excluded juror and criminal
defendant had a "close relationship" because first, they shared a
"common interest in eliminating racial discrimination from the
courtroom[,]" and second, the criminal defendant would be a
"motivated, effective advocate" for the excluded juror's rights
because a victory in the case might result in the overturning of
his conviction.  Id. at 414.  While plaintiffs and persons of
Asian descent and non-Whites likely share the common interest of
prohibiting defendants from allegedly discriminating against them
in the grand jury recruitment and selection processes, it is
doubtful whether plaintiff would be a "motivated, effective
advocate" for Asians' and non-Whites' constitutional rights.
Plaintiffs' ability to win this suit is not necessarily dependent
upon their claims of alleged discrimination against Asians and
non-Whites.  As such, they do not have the same incentive to
/////

11

serve as an effective advocate on behalf of Asian and non-White populations.

Furthermore, to the extent that plaintiffs argue they are members of a "non-White" recognizable, distinctive group for purposes of standing, their argument fails.  The court has explained that "persons challenging grand-jury selection practices on th basis of statistical disparities must first establish which 'identifiable groups' have been excluded." Quadra v. Superior Court of City and County of San Francisco, 378 F. Supp. 605, 614 (citing Hernandez v. Texas, 347 U.S. 475 (1954)).  Plaintiffs argue that they are "entitled to present evidence to show that . . . non-white ethnic minorities who have been excluded" from grand jury participation here form a "cognizable group."  (Pls.' Reply, filed July 28, 2006, at 7:23-26).  However, the Ninth Circuit has held that "[a]ny group which might casually be referred to as 'non-whites' would have no internal cohesion, nor would it be viewed as an identifiable class by the general population," such that it might challenge a grand jury selection process.  United States v. Suttiswad, 696 F.2d 645, 649 (9th Cir. 1982); see also United States v. Luong, 255 F. Supp. 2d 1123, 1127 (E.D. Cal. 2003)(J. Shubb). Therefore, plaintiffs do not have standing to bring their claims as they arise from defendants' alleged exclusion of "non-Whites" from the grand jury recruitment and selection processes.

Accordingly, plaintiffs have standing to bring their claims regarding defendants' alleged constitutional violations only to the extent those violations arise out of the systematic exclusion
/////

12

1  of Hispanics in the grand jury recruitment and selection
2  processes.

3      **C.   Due process claim**

4      Additionally, defendants challenge plaintiffs' standing to
5  assert their due process claim on the ground that, "the right of
6  members of the public . . . not to be excluded from a grand jury
7  due to racial discrimination is based on the right to equal
8  protection." (Dfs.' Memo. Re: Sov. Imm. and Standing at 15:13-
9  15). Defendants contend that only criminal defendants may assert
10 a due process right to a nondiscriminatory grand jury selection
11 process, citing the Supreme Court's decision in <u>Campbell v.</u>
12 <u>Louisiana</u>. However, plaintiffs' right to bring a due process
13 claim against defendants for their alleged conduct goes to the
14 merits of plaintiffs' claims. The court will not address this
15 issue where the parties were directed only to address issues
16 relating to standing and 11th Amendment immunity.

17     **D.   Discriminatory intent**

18     Finally, defendants argue that plaintiffs lack standing
19 because plaintiffs "can not show any discriminatory intent in the
20 Yolo County jury selection process as a matter of law." (Dfs.'
21 Memo. Re: Sov. Imm. and Standing at 11:11-12). Defendants rely
22 upon plaintiffs' failure to establish a prima facie equal
23 protection case under the test set forth in <u>Castaneda v. Partida</u>.
24 430 U.S. 482 (1977). However, whether plaintiffs have
25 established defendants' discriminatory intent is an issue on the
26 merits. As such, the court will not consider this argument at
27 this time.
28 /////

1

**CONCLUSION**

2        For the foregoing reasons, the court may properly assert

3 jurisdiction over plaintiffs' claims against defendants pursuant

4 to the <u>Young</u> exception to 11th Amendment immunity.  However, with

5 respect to claims against defendant Weaver, the court may assert

6 jurisdiction over them only to the extent they relate to

7 defendant Weaver's alleged discriminatory conduct with respect to

8 the grand jury recruitment process.  Furthermore, plaintiffs have

9 standing to sue for defendants' alleged constitutional violations

10 arising from the systematic exclusion of Hispanics from the

11 recruitment and selection processes of the Yolo County Grand

12 Jury.  Plaintiffs do not, however, have standing to bring their

13 claims against defendants as they arise from the alleged

14 systematic exclusion of Asians and "non-Whites" from the same

15 processes.

16        IT IS SO ORDERED.

17 DATED: August 4, 2006

18

19                                    /s/ Frank C. Damrell Jr.
                                     FRANK C. DAMRELL, Jr.
20                                   UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

14